IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LAZERRICK COFFEE, R70006, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) )   Case No. 24-cv-1705-RJD ) |
| WEXFORD HEALTHCARE, DR. MYERS, PHYSICIAN'S ASSISTANT DESAI, NURSE PRACTITIONER BOB, NURSE MACK, | ) ) ) ) ) ) |
| Defendants. | ) |

## **MEMORANDUM AND ORDER**

**DALY, Magistrate Judge:**

Plaintiff Lazerrick Coffee, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Pinckneyville Correctional Center (Pinckneyville), brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. Plaintiff alleges that the defendants have failed to provide adequate care for his sickle cell condition. Plaintiff seeks monetary compensation.

Plaintiff's Complaint (Doc. 1) is now before the Court[1] for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28

---

[1] The Court has jurisdiction to resolve Plaintiff's motions and to screen his Complaint in light of his consent to the full jurisdiction of a magistrate judge and the Illinois Department of Corrections' and Wexford's limited consent to the exercise of magistrate judge jurisdiction as set forth in the Memorandums of Understanding between the Illinois Department of Corrections and Wexford and this Court.

U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

### THE COMPLAINT

Plaintiff has suffered from sickle cell condition for many years. (Doc. 1 at 7). His condition can cause sudden severe pain. In mid-April of 2024, he was suffering from a sickle-cell crisis, which he described as a sudden severe onset of pain caused by blockage of his blood vessels by sickle cells. (*Id.*). He was furloughed to a hospital in Carbondale where he was prescribed medication. Once he had returned to the prison on April 28, 2024, Defendant Nurse Mack informed him that his prescription for Tramadol had been denied. Mack explained that doctors or specialists are not required to follow recommendations from outside providers because Wexford medical providers have sole discretion. (Doc. 1 at 7). Mack told him he would only receive Tylenol per Dr. Myers. (Doc. 1 at 7).

On May 23, 2024, Plaintiff was again escorted to the hospital for a five-day stay related to his sickle cell condition. He claims he was again prescribed medication but was denied his medication upon return to the prison. (Doc. 1 at 7-8).

On June 25, 2024, Plaintiff spoke to Defendant physician's assistant Desai about his medical needs for a second time following an earlier consultation in May of 2024. Plaintiff alleges that Desai claimed that no orders had been received from the hospital and/or that no prescription orders existed. Plaintiff claims that this was an error because discharge paperwork is always given to the transporting officer. Plaintiff claims he also had a copy of his records. Plaintiff alleges that he also attached a grievance response from January of 2024 to substantiate his claims of deliberate indifference. (Doc. 1 at 8). Near the end of the complaint, he writes that he has a "Monell claim," but does not provide any supporting facts or allegations. (Doc. 1 at 9).

In support of the complaint, Plaintiff submitted assorted grievance documents and excerpts of medical records. A response to a May 2024 grievance indicates that "at the time the patient was received back to the institution from his Med Furlough not all of the orders from the hospital had not been received. So PA Desai was uninformed of the need for Tramadol/Ultram. As of today [May 13, 2024] all orders are in the medical file and an order for the remaining prescription is being ordered." (Doc. 1 at 16). The January grievance (Doc. 1 at 21-24) that Plaintiff referenced in his complaint concluded that he was a "no show" at nurse sick call, and indicated he would need to be assessed by a nurse to be referred for further care. (Doc. 1 at 24).

Based on the allegations in the Complaint, the Court designates the following counts:

**Claim 1:** **Eighth Amendment deliberate indifference claim against Defendants Nurse Mack or Dr. Myer for refusing to fill Plaintiff's April 2024 Tramadol prescription from his mid-April hospital visit;**

**Claim 2:** **Eighth Amendment deliberate indifference claim against Defendant Desai for failing to properly ascertain and fulfill recommendations for Plaintiff's sickle cell needs in May or June of 2024.**

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court**.**  Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*. See *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

## Preliminary Dismissals

Plaintiff named Nurse Practitioner Bob in the caption of his case, but there are no factual allegations linked to Defendant Bob in the narrative of the complaint. Naming an individual in

the caption without discussing their personal role in the factual narrative is insufficient to state a claim. *Black v. Lane*, 22 F.3d 1395, 1401 n. 8 (7th Cir. 1994) (finding that it was proper to dismiss a defendant who was named in a case caption but was not otherwise mentioned in the factual allegations). Defendant Bob is dismissed without prejudice.

Additionally, Plaintiff has named Wexford Healthcare, and he has expressed a desire to proceed under a *Monell* theory. *See e.g., Howell v. Wexford Health Sources, Inc.,* 987 F.3d 647, 652-53 (7th Cir. 2021) (explaining the extension of *Monell* liability for to private corporations in the prison context if the corporation had a policy, custom, or practice that causes a constitutional violation). While *Monell* is a proper legal theory to seek recovery from Wexford, Plaintiff has not given any facts that describe Wexford's involvement in his situation, other than to plainly allege that Nurse Mack told him Wexford practitioners could exercise their discretion when selecting a course of medical treatment. A policy to exercise medical discretion does not violate the constitution by its very existence. Without more detail, the Court is unable to determine if Plaintiff might have a valid claim against Wexford. Accordingly, Plaintiff's allegations against Wexford are dismissed as threadbare and insufficient to state a claim at this early juncture. Wexford is dismissed without prejudice.

## Discussion

An Eighth Amendment claim arising from the denial of medical care consists of an objective and a subjective component. *Berry v. Peterman*, 604 F.3d 435, 439–40 (7th Cir. 2010). A plaintiff must show that he suffered from a serious medical condition (i.e., an objective standard) and also show that each defendant responded with deliberate indifference (i.e., a subjective standard). *Id.* To satisfy the subjective component, a prisoner must demonstrate that an official knew of and disregarded an excessive risk to inmate health. *Greeno v. Daley*, 414 F.3d 645, 653

(7th Cir. 2005). Neither medical malpractice, nor mere disagreement with a doctor's medical judgment will amount to deliberate indifference. *Id.* Additionally, an inmate is not entitled to demand specific care, and a medical professional may choose from a range of acceptable courses of care. *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019).

At this preliminary juncture, Plaintiff's allegations that he had sickle cell condition and experienced at least one sickle cell crisis surrounding the allegations in his complaint are sufficient to establish a serious medical condition. He goes on to allege that Defendants Mack and Dr. Myers exercised discretion and refused to follow the recommendations of the hospital to give him Tramadol and opted instead to administer Tylenol. The implication is that this was not adequate to treat his pain, though Plaintiff does not clearly describe what impact this decision had on his well-being. The Seventh Circuit explained in *Wilson v. Adams*, 901 F.3d 816, 822 (7th Cir. 2018) that, "'[a] jury can infer conscious disregard of a risk from a defendant's decision to ignore instructions from a specialist.' *Zaya*, 836 F.3d at 806; *see Petties*, 836 F.3d at 729. But that does not mean that a doctor must always follow the recommendation of a specialist. *See Petties*, 836 F.3d at 729 ("[E]vidence that some medical professionals would have chosen a different course of treatment is insufficient to make out a constitutional claim.")." At this preliminary juncture, the Court reads the pleading broadly in Plaintiff's favor, and Plaintiff's allegations are sufficient to at least suggest that with elaboration, he may be able to make out a claim about Mack and Dr. Myers' decision to depart from the hospital's recommendations. Thus, Claim 1 may proceed against Mack and Myers.

In Claim 2, Plaintiff alleges that Defendant Desai inaccurately reported that no prescription orders existed in relation to one or more of his hospital stays, which he knew to be false because he possessed a copy of the discharge paperwork with medication information. He indicates he

spoke to Desai on June 25, 2024, but also suggests he had spoken to Desai about the same issue in early May of 2024. A single missed dose of medication or an error due to negligence of Desai about the existence of prescriptions with Plaintiff's discharge likely would not be enough to state a claim, but Plaintiff's allegations that he spoke to Desai more than once may be enough to support an inference that she knew he had an ongoing issue with access to prescribed medications and failed to act. At this preliminary juncture, Plaintiff will be allowed to proceed against Desai on Claim 2.

## MOTION FOR RECRUITMENT OF COUNSEL

Plaintiff's Motion for Recruitment of Counsel (Doc. 3) is **DENIED** at this time without prejudice. There is no constitutional or statutory right to counsel in federal civil cases. *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010); *see also Johnson v. Doughty*, 433 F.3d 1001, 1006 (7th Cir. 2006). In determining whether to recruit counsel, the Court considers two factors. *See Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007). Plaintiff's Motion and exhibits demonstrate that he has made multiple attempts to secure his own counsel. (Doc. 3 at 3-9). However, the Court must also consider the complexity of the case and Plaintiff's competence to pursue the matter without counsel. *See Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013); *Santiago v. Walls*, 599 F.3d 749, 761 (7th Cir. 2010). Plaintiff contends that he has limited legal knowledge and access to the law library, that issues in his case will be complex, and that an attorney would be able to help him adequately represent his interests at a trial. While Plaintiff's concerns are certainly valid, it is very early in this case and the next steps will be very straightforward. Further, at this early stage of the litigation, it is difficult to accurately evaluate the need for the assistance of counsel. *See Kadamovas v. Stevens*, 706 F.3d 843, 845 (7th Cir. 2013) ("[U]ntil the defendants respond to the complaint, the plaintiff's need for assistance of counsel...cannot be gauged."). No one has been

served in this case, and a discovery schedule has not been entered. Although the motion is denied at this juncture, Plaintiff may renew his request for counsel if necessary, as the case progresses.

### DISPOSITION

**IT IS HEREBY ORDERED THAT Claim 1** of the Complaint (Doc. 1) survives against Defendants Nurse Mack and Dr. Myers and **Claim 2** survives against Defendant Physician's Assistant Desai.  By contrast, Plaintiff has failed to state a claim against Defendants Wexford Healthcare or Nurse Practitioner Bob, so the Clerk of Court is **DIRECTED** to **TERMINATE** these defendants.

The Clerk of Court is **DIRECTED** to prepare for Defendants Nurse Bob, Dr. Myers, and Physician's Assistant Desai: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merits Review Order.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed in forma pauperis was granted. See 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a change of address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute. FED. R. CIV. P. 41(b).

The Clerk of Court is **DIRECTED** to enter the standard HIPAA order in this case because it may involve the exchange of medical records.

Plaintiff's Motion for Recruitment of Counsel (Doc. 3) is **DENIED** without prejudice.

**IT IS SO ORDERED.**

**DATED: September 6, 2024**

*s/ Reona J. Daly*  
**Reona J. Daly**  
**United States Magistrate Judge**

**NOTICE TO PLAINTIFF**

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear.  As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.